Wetlands Council
No. 2009-037

APPEAL OF GARRISON PLACE REAL ESTATE INVESTMENT TRUST
(New Hampshire Wetlands Council)

Argued: September 24, 2009
Opinion Issued: December 16, 2009

*Mosca Law Office*, of Manchester (*Edward C. Mosca* on the brief and orally), for the petitioner.

*Pierce Atwood, LLP*, of Portsmouth (*Mark E. Beliveau* and *Michele E. Kenney* on the brief, and *Mr. Beliveau* orally), for the respondent.

DUGGAN, J. This appeal arises from the issuance of a wetlands permit to the petitioner, Garrison Place Real Estate Investment Trust (Garrison Place), by the New Hampshire Department of Environmental Services (DES). The respondent, Town of Barrington (town), appealed the issuance to the New Hampshire Wetlands Council (wetlands council or council). The wetlands council remanded the matter to DES. Garrison Place now appeals. We reverse the wetlands council's order.

The following facts are drawn from the administrative record. USA Springs, Inc. filed a request with DES for a large groundwater withdrawal permit pursuant to RSA chapter 485-C. On July 1, 2004, DES granted the withdrawal permit subject to certain conditions. Condition 5 required USA Springs to implement a wetlands monitoring program to track the impact of the large groundwater withdrawal on groundwater and wetlands, including Barrington Prime Wetland #40 (the prime wetland). Condition 6

set forth various "Mitigation Requirements" to apply "[i]n the event that adverse impacts occur." Condition 6 requires that USA Springs immediately stop or reduce the groundwater withdrawal if the monitoring devices detect any adverse impact on the water level of the prime wetland.

Garrison Place constructed six monitoring devices in and adjacent to the prime wetland. In November 2004, Garrison Place filed an after-the-fact request with DES to obtain a Prime Wetlands permit that would allow it to retain the six monitoring devices. DES may not issue such a permit "unless the department is able, specifically, to find clear and convincing evidence on the basis of all information considered by the department, and after public hearing, that the proposed activity, either alone or in conjunction with other human activity, will not result in the significant net loss of any of the values set forth in RSA 482-A:1." RSA 482-A:11, IV (Supp. 2008). DES approved Garrison Place's request for a wetlands permit. DES denied the town's motion for reconsideration, and the town appealed to the wetlands council.

The wetlands council denied the town's appeal. The town filed a motion for reconsideration, which the council granted in part. The council remanded the case to DES, finding "that DES failed, in its written decision, to properly separate and specify the 'clear and convincing evidence' it used to support its decision relative to the prime wetlands as required by RSA 482-A:11, IV." Under the statutory scheme then in effect, decisions of the council were appealable to the superior court. RSA 482-A:10, VIII (2001) (amended 2008). Both parties appealed.

On September 26, 2006, the superior court affirmed the decision of the wetlands council, ruling that "DES did not specifically state [by clear and convincing evidence] that the activity will not result in a significant net loss." The superior court remanded the matter to DES to specify the clear and convincing evidence it relied upon to reach its decision.

In October 2006, DES issued an amended decision. DES relied upon information acquired in the groundwater withdrawal permit proceedings and public hearings in determining that the installation and operation of the six monitoring devices would not result in the significant net loss of any values set forth in RSA 482-A:1. Specifically, DES determined that the installation and operation of the monitoring devices "affects three very small areas" and would "not damage or destroy the affected wetlands complex or adversely affect its natural functions and values in any significant way." It also found that Conditions 5 and 6 of the withdrawal permit assured that the large groundwater withdrawal would have no negative effect on the prime wetland because the monitoring devices would provide the data needed to require the reduction or the cessation of the large groundwater withdrawal. The town filed a motion for reconsideration, which DES denied.

The town appealed to the wetlands council. In September 2008, the council determined that DES had again failed to set forth the "clear and convincing evidence" supporting its finding that there would be no significant loss to wetlands values. The council rejected DES' conclusion that the mitigation requirements of the groundwater withdrawal permit could serve as "clear and convincing evidence" because "Condition 6 contemplates a scenario where there is an adverse impact to the prime wetland." The wetlands council, therefore, remanded the matter to DES to set forth "clear and convincing evidence" supporting its conclusion "that an impact to a prime wetland which triggers the mitigation requirement of Condition 6 of the [groundwater withdrawal permit] will not result in the significant net loss of any of the values set forth in RSA 482-A:1." Garrison Place moved for a rehearing, which the wetlands council denied. This appeal followed.

Garrison Place argues the wetlands council acted unlawfully and unreasonably by: (1) "failing to follow the superior court's order that DES is required to accept as clear and convincing evidence in this proceeding the findings made in connection with the issuance of USA Springs' large groundwater withdrawal permit relative to [the prime wetland]"; (2) "construing the term 'other human activity' in RSA 482-A:11, IV to encompass the large groundwater withdrawal permitted to USA Springs under RSA 485-C"; and (3) "not treating the findings made in connection with the USA Springs' large groundwater withdrawal permit relative to [the prime wetland] as binding in this proceeding."

Our standard of review of the wetlands council's decision is set forth in RSA 541:13, which provides: "[A]ll findings of the [wetlands council] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13 (2007).

With respect to the first issue, we understand Garrison Place's argument to be that the wetlands council's order, ruling that DES failed to identify clear and convincing evidence that supports the issuance of the wetlands permit, was clearly unreasonable or unlawful. Addressing that issue requires us to consider the standard of review governing appeals to the wetlands council, which is set forth in RSA 482-A:10, V:

> The appeal shall be determined upon the record below. The burden of proof shall be on the party seeking to set aside the department's decision to show that the decision is unlawful or unreasonable. All findings of the department upon all questions of fact properly before it shall be prima facie lawful and reasonable.

*See Greenland Conservation Comm'n v. N.H. Wetlands Council,* 154 N.H. 529, 544 (2006) (setting forth wetlands council's standard of review).

"[W]e first examine the language found in the statute and where possible, we ascribe the plain and ordinary meanings to words used." *State v. Cobb,* 143 N.H. 638, 643 (1999) (quotation omitted). "When a statute's language is plain and unambiguous, we need not look beyond [it] for further indications of legislative intent." *State v. Comeau,* 142 N.H. 84, 86 (1997) (quotation omitted). "Courts can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include." *Appeal of Astro Spectacular,* 138 N.H. 298, 300 (1994) (quotation omitted).

■ Under the plain language of RSA 482-A:10, V, the wetlands council's review of DES decisions is deferential. The party appealing to the council bears the burden of presenting "the [c]ouncil with a preponderance of clear and concise evidence that otherwise persuades the [c]ouncil such a decision was unreasonable and/or unlawful." *Greenland Conservation Comm'n,* 154 N.H. at 543. As noted by the council itself, the council "cannot substitute its independent judgment of the facts and circumstances of a decision for that used by DES in its own deliberations." *Id.*

DES found that "the installation and operation of the six specified monitoring devices, either alone or in conjunction with other human activity, will not result in the significant net loss of any of the values set forth in RSA 482-A:1." The DES decision that set forth the clear and convincing evidence was lengthy and detailed. It provided:

  a.  The installation and operation of the six monitoring devices affects three very small areas totaling approximately two square feet. [The prime wetland] is approximately 29.1 acres in size (per Prime Wetland Report received March 18, 1991). The installation and operation of the monitoring devices, including related human activity such as walking to the monitors and collecting data (without additional dredging, filling or constructing other structures) will not damage or destroy the affected wetlands complex or adversely affect its natural functions and values in any significant way.

  b.  On July 1, 2004 the Department issued large Groundwater Withdrawal Permit No. LGWP-2004-0003 . . . . Condition 5 of the [groundwater withdrawal permit] specified the details of the location, installation, monitoring and reporting requirements for the six monitoring wells that are the subject of this permit. Condition 6 of

the [groundwater withdrawal permit] specified the mitigation requirements in the event that adverse impacts, including adverse impact to wetlands, occur. Condition 6 requires that the groundwater withdrawals be reduced in a phased manner, or stopped completely, to mitigate or prevent adverse impacts to wetlands, including [the prime wetland]. The installation of the monitoring devices and collection of data from the monitoring devices assure that the large groundwater withdrawal authorized [*sic*] the [groundwater withdrawal permit] will have no negative effect on the health, vitality, and natural conditions of [the prime wetland] by providing the data needed to require reductions or the cessation of the large water withdrawals. The monitoring devices installed in [the prime wetland] assure that there will be no significant loss of any of the values set forth in RSA [482-A:1] as a result of the large groundwater withdrawal authorized by the [groundwater withdrawal permit].

On appeal, the wetlands council concluded that the DES order was inadequate and stated that:

Condition 6 of the [groundwater withdrawal permit] concerns mitigation requirements in the event that there are adverse impacts to wetlands, including the prime wetland at issue. As Condition 6 contemplates a scenario where there is an adverse impact to the prime wetland, the Council finds and concludes that DES has not set forth the clear and convincing evidence it used to support its conclusion that such an impact will not result in the significant net loss of any of the values set forth in RSA 482-A:1.

We disagree. Under RSA 482-A:11, IV, DES must determine whether "the proposed activity, either alone or in conjunction with other human activity" will result in the significant net loss of any wetlands values. In paragraph a of its order, DES focused on the proposed activity of installing and operating the six monitoring devices. It specifically found that the devices, "including related human activity such as walking to the monitors and collecting data," would not "adversely affect [the prime wetland's] natural functions and values in any significant way."

In paragraph b, DES focused on the impact of other human activity, to wit, the groundwater withdrawal, on wetlands values. DES concluded that the monitoring devices "assure that there will be no significant loss of any of the values set forth in RSA [482-A:1] as a result of the large groundwater

withdrawal" because the monitoring devices would "provid[e] the data needed to require reductions or the cessation of the large water withdrawals."

■ In its analysis, the wetlands council stated that DES did not provide clear and convincing evidence that if the mitigation requirements of Condition 6 are triggered by an adverse impact "that such an impact will not result in the significant net loss of" wetlands values. As DES stated, however, such adverse impacts should not result in the significant loss of wetlands values because the monitoring devices themselves, in addition to the mitigation requirements of Condition 6, assure that groundwater withdrawal will be reduced or halted before any significant loss of RSA 482-A:1 values occurs.

DES' findings are precisely the type that are entitled to deference under RSA 482-A:10, V. Therefore, the wetlands council acted unreasonably in reversing the decision of DES. Because we reverse on this issue we need not address the remaining issues.

*Reversed.*

BRODERICK, C.J., and DALIANIS, HICKS and CONBOY, JJ., concurred.