# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2021-0329, <u>Appeal of JoAnn Hoff</u>, the court on September 8, 2022, issued the following order:**

Having considered the parties' briefs and the record submitted on appeal, the court concludes that a formal written opinion is unnecessary in this case. The claimant, JoAnn Hoff, appeals an order of the Compensation Appeals Board (CAB) denying her request to increase her indemnity benefits from a fixed partial rate to the temporary total disability rate. On appeal, the claimant argues that the CAB erred by failing to find a change in conditions justifying an increase in her benefits. We affirm.

The following facts derive from our non-precedential order in the claimant's prior appeal and the record submitted in this appeal. <u>See</u> <u>Appeal of JoAnn Hoff</u>, Case No. 2019-0622, (non-precedential order), 2021 WL 717788 (N.H. Feb. 24, 2021). The claimant was injured in October 2017 while working as a licensed practical nurse for the employer, Valley Regional Hospital, Inc. <u>Id</u>. (order at 1). She subsequently reported experiencing lower back pain and numbness in her legs. <u>Id</u>. An MRI revealed a lumbar disc protrusion. <u>Id</u>. The claimant began receiving indemnity benefits at the temporary total disability rate in November 2017. <u>See id</u>.

In December 2017, Dr. Pikus performed a discectomy on the claimant's lower back, which proved to be partially successful. <u>See id</u>. In June 2018, the claimant returned to Dr. Pikus, reporting that her leg symptoms had returned. <u>Id</u>. Dr. Pikus referred her to Dr. Mason for a physiatric evaluation and assistance in returning to work. <u>Id</u>.

Also in June 2018, the claimant underwent an independent medical evaluation (IME) at the request of the respondent, AIM Mutual – NH Employers Ins. Co., the employer's workers' compensation carrier. <u>Id</u>. The orthopedic surgeon performing the IME concluded that the claimant had "a work capability doing a sit down occupation." <u>Id</u>. at 2. He advised that she should "avoid long periods of standing or walking" and that she should not lift or carry more than 10 pounds. <u>Id</u>. at 2. He further opined that the claimant's "work capability would be primarily sedentary, and desk work."

Consistent with the IME, the employer offered the claimant a temporary, full-time position as a patient access representative in July 2018. <u>Id</u>. The

position was described as requiring occasional (between 1% and 33% of the time) standing and walking, and continuous (between 67% and 100% of the time) sitting, reaching, and fine motor skills.  Id.

The surgeon who conducted the IME opined that the claimant was capable of performing this temporary position with no modifications.  Dr. Pikus and Dr. Mason agreed that the claimant was capable of performing this temporary position; however, Dr. Pikus advised that she needed a "sit/stand modification," and Dr. Mason advised that she needed occasional breaks to reposition.  The claimant neither returned to work after receiving the offer nor communicated with the employer about the offer.  Id.

In December 2018, the claimant completed a functional capacity evaluation (FCE) to determine her work ability.  Id.  The report stated that the claimant could tolerate 25 minutes of consecutive dynamic standing, but could walk only 400 feet for five minutes with a cane.  Id.  The report further stated that the claimant "performed at a sedentary physical demand level," and that her sitting tolerance "was limited to 1 hour 16 minutes initially but declined to 20 minutes at a time."  According to the report, the claimant could not "return to office type nursing like she was doing prior to injury," but she could "tolerate full time employment at a sedentary physical demand level," although she might "benefit from starting at part time transitioning to full time to promote successful reintegration into the work force."

Thereafter, the carrier requested a Department of Labor (DOL) hearing to review the claimant's eligibility for benefits.  Id. at 3.  A DOL hearing officer held the hearing on January 31, 2019, and concluded that the claimant was capable of full-time sedentary work and, thus, that a change in conditions had occurred, which justified reducing her benefits to a fixed partial rate.  See id. The claimant appealed the hearing officer's decision to the CAB, which, in August 2019, following a de novo evidentiary hearing, similarly concluded that she had a work capacity and, therefore, granted the carrier's request to reduce her compensation to a fixed partial rate.  See id.  The claimant appealed the CAB's decision to this court.  Id.  We affirmed the CAB's decision.  Id. at 6.

While her appeal of the CAB's August 2019 decision was pending, the claimant requested a DOL hearing on her claim that her condition had worsened since the January 31, 2019 DOL hearing, justifying a return to indemnity benefits at the temporary total disability rate.  See RSA 281-A:48 (Supp. 2021).  The DOL held the requested hearing in July 2020 at which the carrier argued that the claimant's medical condition had improved rather than worsened.  The carrier also argued that the claimant was no longer entitled to indemnity benefits because she had retired.  The hearing officer found sufficient evidence to terminate the claimant's indemnity benefits.

2

The claimant appealed this DOL decision to the CAB, which conducted a de novo evidentiary hearing in April 2021. The CAB rejected both the carrier's assertion that the claimant's condition had improved and the claimant's assertion that it had worsened. Therefore, the CAB ordered the carrier to continue paying indemnity benefits to the claimant at a fixed partial rate. The claimant unsuccessfully moved for reconsideration, and this appeal followed.

Our standard of review of CAB decisions is established by statute. See Appeal of Hartford Ins. Co., 162 N.H. 91, 92 (2011); RSA 541:13 (2021). All findings of the CAB upon all questions of fact properly before it are deemed prima facie lawful and reasonable. RSA 541:13. Accordingly, our review of the CAB's factual findings is deferential. Appeal of Hartford Ins. Co., 162 N.H. at 93. "Our task is not to determine whether we would have found differently than did the CAB, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." Appeal of Carnahan, 160 N.H. 73, 77 (2010) (quotation and brackets omitted). As the appealing party, the claimant has the burden of demonstrating that the CAB's decision is reversible. See Appeal of Doody, 172 N.H. 802, 806 (2020). We will not disturb the CAB's decision absent an error of law, or unless, by a clear preponderance of the evidence, we find it to be unjust or unreasonable. Id. at 805; see RSA 541:13.

On appeal, the claimant first argues that the CAB erred by concluding that there was no change in conditions justifying an increase in her indemnity benefits. See RSA 281-A:48, I, II. We disagree.

"The initial test for determining whether a claimant is entitled to compensation is whether the worker is now able to earn, in suitable work under normal employment conditions, as much as he or she earned at the time of injury." Appeal of Carnahan, 160 N.H. at 79 (quotation omitted). RSA 281-A:48, I, allows for review of a workers' compensation award or the denial of such an award based upon "a change in conditions." RSA 281-A:48, I.

A change in conditions for the purposes of RSA 281-A:48, I, refers to a change in the claimant's physical condition or ability to engage in gainful employment. See Appeal of Carnahan, 160 N.H. at 79. Gainful employment is statutorily defined to mean "employment which reasonably conforms with the employee's age, education, training, temperament and mental and physical capacity to adapt to other forms of labor than that to which the employee was accustomed." RSA 281-A:2, X-a (2010); see Appeal of Carnahan, 160 N.H. at 80. We have referred to a claimant's ability to engage in gainful employment as the claimant's work capacity. See Appeal of Carnahan, 160 N.H. at 80.

In order for a carrier to reduce or terminate a claimant's benefits, the carrier must show that the claimant's physical condition or work capacity improved and that the change increased the claimant's earning capacity. See

3

id. at 79-80.  Conversely, for a claimant to obtain an increase in benefits, the claimant must show that the claimant's physical condition or work capacity deteriorated and that the deterioration decreased the claimant's earning capacity.  See id.  Earning capacity is "an objective measure of a worker's ability to earn wages."  Id. at 80 (quotation omitted).  Determining earning capacity requires looking at "the worker's overall value in the marketplace, taking into account such variables as [his or her] age, education and job training."  Id. (quotation and ellipsis omitted).  The claimant's work capacity is relevant to the claimant's earning capacity, but is not dispositive.  Id.

In the claimant's prior appeal, we concluded that the record supported the CAB's finding that the claimant had "the ability to perform some kind of work," specifically, "a sedentary occupation which require[s] minimal standing, walking, and lifting."  Appeal of JoAnn Hoff, Case No. 2019-0622, (non-precedential order at 4), 2021 WL 717788 (N.H. Feb. 24, 2021).  We observed that "the IME concluded that the claimant could perform sedentary work without standing or walking for long periods of time and with limits on the weight she could lift," and that the "FCE similarly concluded that [she] could tolerate full-time sedentary employment, with similar restrictions."  Id. (order at 4).

The claimant argues that, after the January 31, 2019 DOL hearing, her work capacity deteriorated such that she no longer has any work capacity.  The record submitted on appeal does not support this contention.  Indeed, as we noted in Appeal of JoAnn Hoff, after the January 31, 2019 hearing, Dr. Mason deferred to the FCE for the claimant's work capacity, "which stated that she could perform sedentary work."  Id.  Additionally, in June 2020, Dr. Mason signed a workers' compensation medical form explicitly releasing the claimant to part-time work with modifications.

Based upon our review of the record submitted on appeal, we conclude that it supports the CAB's finding that the claimant continues to have the capacity to work in "a sedentary occupation which require[s] minimal standing, walking, and lifting."  Id. (order at 4).  To the extent that the evidence before the CAB was conflicting, it was for the CAB to resolve those conflicts in the evidence in the first instance.  See Appeal of Doody, 172 N.H. at 808.  The claimant contends that her lack of work capacity means that she also lacks any earning capacity; however, because we have rejected the premise of that argument, we necessarily reject the argument itself.  See Appeal of Carnahan, 160 N.H. at 80 (explaining that work capacity and earning capacity are distinct terms and that although work capacity is relevant to earning capacity, it is not dispositive).

The claimant next argues that the carrier should have been precluded either by estoppel or by the law of the case doctrine from arguing that her work capacity improved after the January 31, 2019 hearing.  We need not address

4

these arguments because the CAB rejected the carrier's argument that the claimant's work capacity had improved, and the carrier has not appealed that ruling.

Alternatively, the claimant asserts that her benefits should be paid at the diminished earning capacity rate, instead of at a fixed partial rate. She argues that the fixed partial rate was based upon the temporary job her employer offered her in July 2018, and that there was no evidence before the CAB that this job remained available. However, as the carrier correctly observes, as the party requesting the DOL hearing, the claimant had the burden of proof on this issue, and presented no evidence that the job was no longer available. See Appeal of Elliott, 140 N.H. 607, 610 (1996) ("The burden of proof of showing a change in condition[s] is normally on the party, whether claimant or employer, asserting the change . . . . " (quotation omitted)); Johnson v. Aetna Life & Casualty Co., 131 N.H. 698, 702 (1989) (explaining that, when seeking an increase in benefits based upon a change in conditions, the claimant "bears the burden of proving a 'change in conditions'" (decided under prior law)). Under these circumstances, we uphold the CAB's determination that the carrier shall continue to pay the claimant's indemnity benefits at the fixed partial rate. In light of our decision, we necessarily deny the claimant's request that she be awarded prevailing party attorney's fees and costs for this appeal. See RSA 281-A:44 (Supp. 2021).

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**