Compensation Appeals Board
No. 2002-654

APPEAL OF SANFORD WOODMANSEE
(New Hampshire Compensation Appeals Board)

Submitted: June 6, 2003
Opinion Issued: September 29, 2003

*Shaines & McEachern, P.A.*, of Portsmouth (*Gregory D. Robbins* on the brief), for the petitioner.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Robin A. Wrisley* on the brief), for the respondents.

DUGGAN, J. The petitioner, Sanford Woodmansee, appeals the order of the New Hampshire Compensation Appeals Board (board) reducing the rate at which his benefits were paid from temporary total disability to diminished earning capacity. *See* RSA 281-A:28, :31, :48 (1999); N.H. ADMIN. RULES, Lab 510.03. We vacate and remand.

The record supports the following facts. The petitioner is in his mid-forties, has a high school diploma, and has primarily worked on construction jobs as a drywaller. On December 7, 1990, while working for respondent Florida Textures, Inc. (Florida Textures), a dry wall finishing company, he injured his lower back. Since sustaining the injury, the petitioner has had four back surgeries, taken numerous pain medications and undergone physical therapy. Additionally, he has suffered from depression, has seen a psychologist and taken antidepressants for treatment.

The petitioner received temporary total disability benefits for his back injury. In March 1999, Florida Textures' insurer, respondent One Beacon Insurance (One Beacon), obtained a videotape showing the petitioner installing siding on a house. Armed with the videotape, the respondents petitioned the New Hampshire Department of Labor (DOL) to modify the petitioner's award of temporary total disability payments pursuant to RSA 281-A:48. The hearing officer ruled that the petitioner's new work capacity was a sufficient change in conditions to warrant terminating his temporary total disability benefits. The petitioner appealed this decision, and the board reversed it; neither party appealed the board's decision to this court.

In December 2000, One Beacon requested another change of conditions hearing pursuant to RSA 281-A:48. This time, the hearing officer ruled in the petitioner's favor, finding that neither his medical nor his economic condition had changed since March 8, 1999 (the date of the previous DOL hearing), and, thus, he remained entitled to temporary total disability benefits.

The respondents appealed to the board, which conducted a *de novo* hearing on May 29, 2002. At the hearing, the petitioner testified that since 1999, he had worked on four construction jobs. One job involved moving a mobile home from a mobile home park and relocating it on a new

foundation. The contract price for this job was approximately $55,000. The petitioner's role was to build a small addition on the home and to hire subcontractors to clear the land, put in the foundation and relocate the home.

Another job involved re-roofing a home, adding insulation and vinyl siding, rebuilding some porches, and doing some electrical work. The contract price for this job was between $50,000 and $60,000. A third job also involved re-roofing a home, for which the petitioner charged between $10,000 and $12,000. The last job required the petitioner to arrange to have flooring and the hearth replaced in a home that was damaged by a chimney fire. The petitioner could not recall what he charged for this work.

The petitioner testified that because of his chronic pain he could not work either a 40-hour week or a reduced work schedule for someone else. He explained that he is homebound at least one or two days a week and that he cannot anticipate when he will be homebound because of pain.

The board also heard from the petitioner's wife, who testified that she did the paperwork for her husband's construction business in 1999 and 2000. She testified that the business lost money and that she and her husband declared bankruptcy at one point.

In addition, the respondents produced medical reports from Michael J. O'Connell, M.D., MHA, George W. Monlux, M.D., and H. James Forbes, M.D. Dr. O'Connell, a practitioner with Northeast Pain Consultants, is one of the petitioner's treating physicians. Several of his reports were submitted, including a July 1999 report in which he opined that the petitioner's medical condition had not materially changed from January to July 1999 and that he had no "usable work capacity." Dr. O'Connell found him to be unemployable "due to inability to predict pain levels and therefore *work availability* from day to day." He explained that "[a]t any particular point in time, [the petitioner] might be quite capable of working at a light duty capacity for a number of hours, or, alternatively he might be totally unable to get out of bed due to high sustained levels of pain." In a July 2000 letter to petitioner's counsel, Dr. O'Connell reiterated that he did not believe that the petitioner "has an earning capacity based on a regular work schedule set for him by an employer" because "[e]xacerbations of pain are entirely unpredictable."

Dr. Monlux examined the petitioner in 2000 and 2001, at Dr. O'Connell's request. In his May 2000 report, Dr. Monlux stated that he agreed with Dr. O'Connell that the petitioner "is unable to work." In his June 2001 report, he stated that the petitioner's overall clinical picture had worsened since the 2000 examination. He opined that the petitioner "is not able to return to his former profession" and that he is "totally disabled based on

the Social Security guidelines of not being able to sit more than 15 minutes or stand more than 15 minutes." Dr. Monlux stated that he did not think it would be realistic to provide the petitioner with vocational rehabilitation or for the petitioner to attempt to return to work.

Dr. Forbes evaluated the petitioner in November 1998 and June 2000 at the respondents' request. In his report of the June 2000 evaluation, Dr. Forbes opined that the petitioner "has demonstrated that he does have a work capacity" that was difficult to quantify because it "seems to be intermittent." He noted that nothing could be done for the petitioner medically, except to control his chronic pain.

The respondents' evidence also included a report from a certified accountant who reviewed copies of the petitioner's income tax forms, among other documents, to determine whether he had an earning capacity between November 3, 1999, and June 12, 2001. Based upon this review, the accountant concluded, in part, that the petitioner was the proprietor of a construction business engaged in for-profit activities during 1999 and 2000, that he materially participated in the business and, during certain periods, that he did so without outside labor.

Following the hearing, the board ruled that although the petitioner continued to experience pain, his "medical condition is not such that [he] has no work or earning capacity." In reaching this conclusion, the board stated that it adopted the medical opinion of Dr. Forbes.

"We will overturn the board's decision only for errors of law, or if we are satisfied by a clear preponderance of the evidence before us that the decision is unjust or unreasonable." *Appeal of Staniels*, 142 N.H. 794, 796 (1998); *see* RSA 541:13 (1997). The board's factual findings are *prima facie* lawful and reasonable. *See* RSA 541:13. As the appealing party, the petitioner bears the burden of proof. *Appeal of Staniels*, 142 N.H. at 796.

The petitioner first argues that the board erroneously determined that the respondents met their burden of proof to demonstrate a "change in conditions" sufficient to reduce his benefits from the temporary total disability to the diminished earning capacity rate. He argues that to establish the requisite "change in conditions," the respondents had to demonstrate that his medical condition had improved. We disagree.

RSA 281-A:48 provides, in pertinent part:

> I. Any party at interest with regard to an injury occurring after July 1, 1965, may petition the commissioner to review a denial or an award of compensation ... by filing a petition ... upon the ground of a change in conditions, mistake as to the nature or extent of the injury or disability, fraud, undue influence, or coercion.

. . . .

> III. If a petitioner files for reducing or for ending compensation, the petitioner shall submit along with the petition medical evidence that the injured party is physically able to perform his or her regular work or is able to engage in gainful employment.

"We are the final arbiter of the meaning of the workers' compensation statute, and the nature and extent of compensation to the injured employee is governed by the express statutory language and that which can be fairly implied therefrom." *Appeal of Hiscoe*, 147 N.H. 223, 230 (2001) (quotation and ellipsis omitted).

■ "Although the beginning point and usually the main concern of an inquiry into change in condition for reopening purposes is claimant's relative physical condition, . . . disability in the compensation sense has both an economic as well as a medical component." 8 A. LARSON, WORKERS' COMPENSATION LAW § 131.03[1][e] (2000). As we have previously explained, "The Workers' Compensation Act is designed to compensate workers who suffer a loss of earning capacity as a result of a work-connected injury." *Appeal of Normand*, 137 N.H. 617, 621 (1993). Thus, while "[t]ypically, the 'change in condition' which justifies reopening and termination of disability benefits is ordinarily a change, for better or worse, in claimant's physical condition," *Appeal of Hiscoe*, 147 N.H. at 230 (quotation and brackets omitted), "a change in claimant's ability to get or hold employment, or to maintain his earlier earning level, should logically be considered a 'change in condition,' even though claimant's physical condition may have remained unchanged." LARSON, *supra.* Accordingly, we hold that the "change in condition" necessary to justify reducing or terminating benefits need not be a change in a claimant's physical condition, but may be a change in the claimant's earning capacity.

The petitioner next argues that the board erroneously relied solely upon Dr. Forbes' opinion that the petitioner had an intermittent work capacity instead of determining whether he now had an earning capacity that he previously lacked. We agree.

As the respondents concede, Dr. Forbes did not opine as to whether the petitioner had an earning capacity, but rather limited his opinion to whether the petitioner had a work capacity. By relying upon Dr. Forbes' opinion, the board effectively conflated the concepts of work capacity and earning capacity, and, thus, erred. *See Appeal of Jackson*, 142 N.H. 204, 206 (1997).

Work capacity and earning capacity measure different things. Work capacity refers to whether the claimant may now be able to perform some

kind of work, *see id.*, while earning capacity refers to the claimant's ability to compete in the open labor market, *see Appeal of CNA Ins. Co.*, 148 N.H. 317, 323-24 (2002). Although work capacity may be relevant to earning capacity, it is not dispositive. *See Appeal of Jackson*, 142 N.H. at 206.

■ "Earning capacity is an objective measure of a worker's ability to earn wages." *Appeal of Commercial Union Ins. Co.*, 145 N.H. 356, 358 (2000) (quotation omitted). The test is whether the worker is now able to earn, in suitable work under normal employment conditions, as much as he or she earned at the time of injury. *See Appeal of CNA Ins. Co.*, 148 N.H. at 317. As such, a determination of whether a worker's earning capacity has been diminished or enhanced must be reached with reference to the worker's value in the marketplace, independent of the subjective measure of the worker's actual earnings. *Appeal of Commercial Union Ins. Co.*, 145 N.H. at 358. The relevant inquiry "must include a consideration of th[e] worker's overall value in the marketplace[,] . . . taking into account such variables as [his] age, education and job training." *Appeal of CNA Ins. Co.*, 148 N.H. at 323 (citations omitted).

With respect to self-employment, the determinative issue is whether the employee's skills — "be they management, computer, accounting, sales, consulting, or something else — utilized by the employee in the active operation of his own business, when considered in conjunction with the employee's impairment, age, education, and experience, would enable the employee to compete in the labor market." *Lanning v. Fieldcrest-Cannon, Inc.*, 530 S.E.2d 54, 60-61 (N.C. 2000).

■ Because the board conducted the wrong inquiry, we vacate its decision and remand for a determination as to whether the petitioner experienced a change in his earning capacity that justifies reducing the rate of his benefits from temporary total disability to diminished earning capacity.

■ The petitioner next argues that the evidence did not support a finding that he has an earning capacity. The respondents counter that the record amply supported such a finding. We decline to reach these arguments on appeal. "It is the board's province, not ours, to weigh the evidence in the first instance." *Appeal of Jackson*, 142 N.H. at 207. In light of our ruling, we similarly decline to address the remainder of the parties' arguments concerning the validity of the board's decision.

*Vacated and remanded.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.