Compensation Appeals Board
No. 2008-173

APPEAL OF DEAN FOODS
(New Hampshire Compensation Appeals Board)

Argued: February 12, 2009
Opinion Issued: April 3, 2009

*Devine, Millimet & Branch, P.A.*, of Manchester (*James M. O'Sullivan* and *Elizabeth M. Murphy* on the brief, and *Ms. Murphy* orally), for the petitioners.

*Wyskiel, Boc, Tillinghast & Bolduc, P.A.*, of Dover (*D. Lance Tillinghast* on the brief and orally), for the respondent.

DUGGAN, J. The petitioners, Gallagher Bassett Services, Inc., U.S. Fidelity & Guaranty Insurance Company and Dean Northeast, LLC d/b/a Garelick Farms, appeal the decision of the New Hampshire Compensation Appeals Board (CAB) to continue the respondent, John Eustace's, temporary total disability payments. We affirm.

The record supports the following facts. On November 7, 2003, Eustace (claimant) was injured while working as a milk delivery driver for Garelick Farms. He suffered a lower back injury after slipping on a piece of plastic while pulling a load of dairy products off a truck. He did not fall, but instead twisted his back to support the load. The claimant was initially treated at Elliot Hospital. One week later, he began treatment with Dr. Ashraf Guirgues. Dr. Guirgues restricted the claimant's driving and lifting, taking him out of work. The employer's workers' compensation insurance carrier, Gallagher Bassett, Inc., as adjusters for Fidelity and Guaranty Insurance Company (carrier), initially accepted the claim and paid temporary total disability benefits.

The claimant continued to be treated by Dr. Guirgues, but his pain persisted and Dr. Guirgues referred him to Dr. Manuel Sanchez in January 2004 for pain management. Dr. Sanchez treated the claimant with injections and medication. One year after the incident, the claimant was referred

to Dr. Margaret Tilton for a permanent impairment rating. Dr. Tilton assessed the claimant as having a whole person impairment of thirteen percent.

The carrier requested a hearing, held on August 16, 2005, at the department of labor (DOL) to review the compensation and the extent of disability pursuant to RSA 281-A:48 (1999). The hearing officer ruled that the temporary total disability benefits should continue. The carrier appealed the decision to the CAB for a *de novo* hearing. The CAB found that the claimant remained disabled and continued disability benefits. There was no appeal from that ruling.

On September 7, 2006, the carrier requested a new hearing to review the compensation and the extent of disability. The hearing officer found a change in condition, based upon Dr. Stuart Glassman's independent medical examination, and terminated the claimant's disability benefits as of April 10, 2007. The claimant appealed to the CAB. At that hearing, Drs. Glassman and Sanchez testified in person and Dr. Tilton by deposition transcript.

Dr. Glassman testified based upon his two independent medical examinations of the claimant, one in February 2006, and a second in January 2007. In February 2006, Dr. Glassman diagnosed the claimant with lumbar strain injury with exacerbation of pre-existing lumbar degenerative disc disease. Dr. Glassman disagreed with Dr. Tilton's impairment rating and rated the claimant as having a five percent whole person impairment based upon the AMA Guidelines to the Evaluation of Permanent Impairment. In January 2007, Dr. Glassman performed the second independent medical examination and diagnosed the claimant with a lumbar strain injury. Dr. Glassman noted that he had a non-work-related pre-existing lumbar degenerative disc disease and spondylolisthesis; *i.e.*, slight slippage of the vertebra above in relation to vertebra below. He read the claimant's electromyographic (EMG) study as unremarkable and found no evidence of radiculopathy. Dr. Glassman testified that the clinical findings and diagnostic testing did not correlate with left leg radiculopathy. He stated that the claimant's current treatments were for the pre-existing condition and not the lumbar strain, which he believed had since resolved.

Dr. Sanchez testified that the claimant was referred to him for low back and leg pain in January 2004. Dr. Sanchez stated that the claimant had sensory changes to his lower extremities, with more significant numbness on the right side. Dr. Sanchez testified that the claimant has two long-standing conditions — degenerative disc disease and spondylolisthesis. He testified that the claimant's condition was aggravated by the November 7, 2003 fall. Specifically, Dr. Sanchez testified that the incident resulted in tearing of the ligaments where the lumbar strain is, causing chronic

inflammation and pain. Dr. Sanchez initially treated the claimant with steroid injections; however, the claimant's pain continued shortly thereafter, signifying that the inflammation could not be reversed with steroids. The claimant was treated with physical therapy and medication, including narcotics. Dr. Sanchez testified that it is not unusual for low back pain to then develop into radiculopathy. Dr. Sanchez testified that an EMG may not detect radiculopathy.

Dr. Tilton testified that when she began treating the claimant, he had significant left-sided symptoms. Dr. Tilton observed the claimant with a foot drop; i.e., the inability to control the foot in the heel to toe motion. She diagnosed him with radiculopathy, which caused the foot drop, and spondylolisthesis. Using the AMA Guidelines, Dr. Tilton evaluated the claimant with a thirteen percent impairment based upon the lumbar spine category including radiculopathy. Dr. Tilton testified that when she assesses a permanent impairment rating, she does not expect it to change to "any great extent" over time.

Dr. Tilton disagreed with Dr. Glassman's reading of the claimant's EMG. She saw an abnormality, but could not interpret the EMG as confirming the radiculopathy. She testified that based upon the claimant's condition, he could have nerve symptoms on either side. Dr. Tilton agreed with Dr. Glassman's assessment of the claimant's pre-existing condition; however, she diagnosed the claimant's symptoms as causally linked to the November incident.

In its decision, the CAB found that "the vast majority of the evidence presented went to the issue of the claimant's medical condition and if it were related to the work injury." The CAB noted that "what was not entered into the record was any evidence whatsoever on the claimant's earning capacity." The CAB stated that both Drs. Glassman and Tilton assessed the claimant as suffering a permanent disability. The CAB found Dr. Glassman's 2007 diagnosis that the claimant's current treatment is not work-related to be "incongruous as it does not comport with the diagnosis and permanency of a year prior."

The CAB relied upon Dr. Sanchez's testimony that the claimant's current treatments are work-related, together with Dr. Glassman's 2006 diagnosis of permanent disability, to "result in a finding that at least some of the symptoms and conditions now suffered by the claimant are related to the work injury." The CAB found that the carrier failed to introduce any evidence that the claimant has an earning capacity, and thus stated: "The panel unanimously finds that the carrier has failed to prove that the claimant has an earning capacity which is required since at least some of his current condition is work-related." The carrier moved for a rehearing, which was denied. This appeal followed.

On appeal, the carrier argues the CAB erred in: (1) requiring the carrier to show earning capacity when it argued the injury was no longer work-related; (2) relying upon the first opinion of Dr. Glassman instead of his more recent opinion; (3) relying upon the treating physician, who opined that the claimant's injury was a cumulative trauma injury; and (4) finding that some of the claimant's symptoms are from the work-related injury but failing to specify which symptoms.

We will overturn the CAB's decision only for errors of law, or if we are satisfied by a clear preponderance of the evidence before us that the decision is unjust or unreasonable. *Appeal of Woodmansee*, 150 N.H. 63, 66 (2003). The CAB's factual findings are *prima facie* lawful and reasonable. *See* RSA 541:13 (2007). As the appealing party, the carrier bears the burden of proof. *Woodmansee*, 150 N.H. at 66.

We initially address the carrier's argument that the CAB erred in requiring that it prove earning capacity. The carrier maintains that because it argued that the claimant's injury ceased, it was not required to prove earning capacity. We disagree.

"We are the final arbiter of the meaning of the workers' compensation statute, and the nature and extent of compensation to the injured employee is governed by the express statutory language and that which can be fairly implied therefrom." *Appeal of Hiscoe*, 147 N.H. 223, 230 (2001) (quotation and ellipsis omitted).

RSA 281-A:48 provides, in pertinent part:

> I. Any party at interest with regard to an injury occurring after July 1, 1965, may petition the commissioner to review a denial or an award of compensation . . . by filing a petition . . . upon the ground of *a change in conditions*, mistake as to the nature or extent of the injury or disability, fraud, undue influence, or coercion.
>
> . . . .
>
> III. If a petitioner files for reducing or for ending compensation, the petitioner shall submit along with the petition *medical evidence that the injured employee is physically able to perform his or her regular work or is able to engage in gainful employment.*

(Emphases added.)

In *Appeal of Jackson*, 142 N.H. 204 (1997), we explained the meaning of "a change in conditions" within RSA 281-A:48. In *Jackson*, the carrier petitioned for a termination of the claimant's benefits due to a change in conditions, submitting evidence that the claimant had participated in some

work. *Jackson*, 142 N.H. at 205. The CAB found that the claimant had some work capacity and terminated benefits. *Id.* at 205-06.

On appeal, we stated that, "while relevant, the fact that the claimant may now be capable of performing some type of *work* is not dispositive of his claim that he remains unable to *earn* as much as he did prior to his injury." *Id.* at 206. Thus, we articulated the following two-step analysis for reduction or termination of compensation benefits: "whether the claimant had experienced a 'change in conditions,' and, if so, whether that change affected his *earning* capacity so as to justify a termination of his compensation benefits." *Id.*; *see McKay v. N.H. Compensation Appeals Bd.*, 143 N.H. 722, 733 (1999); *see also Appeal of Normand*, 137 N.H. 617, 621 (1993) ("The Workers' Compensation Act is designed to compensate workers who suffer a loss of earning capacity as a result of a work-connected injury.").

In *Woodmansee*, we went further and held that where a claimant has a change in earning capacity, but no change in his medical condition, benefits may be reduced. *Woodmansee*, 150 N.H. at 67. There, the claimant's medical condition remained unchanged, but there was evidence that the claimant had an earning capacity. *Id.* at 64-66. We held that "the 'change in condition' necessary to justify reducing or terminating benefits need not be a change in a claimant's physical condition, but may be a change in the claimant's earning capacity." *Id.* at 67.

Our analysis of RSA 281-A:48 has focused upon earning capacity; however, in *Hiscoe*, we articulated an exception where the claimant's work-related injury has ceased. *Hiscoe*, 147 N.H. at 230. There, the claimant had a work-related lumbar strain injury and pre-existing degenerative disc disease. *Id.* at 226. The CAB terminated the claimant's disability benefits after finding that there was no causal relationship between the claimant's current disability and her work-related injury. *Id.* The claimant appealed, arguing that the carrier was "required to establish that there was a change in her physical condition, enabling her to perform her regular work or engage in gainful employment." *Id.* at 229.

We distinguished *Jackson* and held "that where an employer has introduced sufficient medical evidence that a claimant's work-related injury has ceased and any physical problems still suffered from are causally related to a pre-existing condition it is not necessary that the employer prove that suitable alternative work is available." *Hiscoe*, 147 N.H. at 231 (quotation omitted). We explained: "If the medical evidence establishes that the petitioner's compensable work-related injury has ceased, a change in condition has occurred, warranting termination of benefits." *Id.* at 230. "This is true even though the claimant is disabled if such disability is due to causes unrelated to the on the job injury." *Id.* (quotation omitted). Thus,

the carrier need not show earning capacity if it can prove that the claimant's work-related injury has ceased.

██ As discussed, RSA 281-A:48 authorizes terminating compensation in two scenarios: (1) where the claimant's "compensable work-related injury has ceased," *Hiscoe*, 147 N.H. at 231; or (2) where the claimant is capable of performing some type of work *and* "is now able to earn, in suitable work under normal employment conditions, as much as he or she earned at the time of injury," *Woodmansee*, 150 N.H. at 68. These two scenarios are not mutually exclusive. If the CAB finds that the work-related injury has ceased, there is "a change in conditions," and the inquiry ends there. *See Hiscoe*, 147 N.H. at 230. If not, the CAB must address whether the claimant has an earning capacity. *See Woodmansee*, 150 N.H. at 67; *Jackson*, 142 N.H. at 206. If the petitioner does not argue that the work-related injury has ceased, but instead argues a different change in conditions has occurred, the CAB inquiry must include whether the claimant has a change in earning capacity. *See Woodmansee*, 150 N.H. at 67; *Jackson*, 142 N.H. at 206.

██ Here, the carrier introduced Dr. Glassman's testimony and 2007 independent medical examination in support of its position that the claimant's work-related injury had ceased. The CAB, however, was not persuaded by Dr. Glassman's 2007 assessment, and instead found it to be "incongruous as it does not comport with the diagnosis and permanency of a year prior." The CAB relied upon the permanency assessments of Dr. Tilton and Dr. Glassman, as well as Dr. Sanchez's testimony, to find that the claimant's injury is still partially work-related. Thus, unlike *Hiscoe*, where there was "substantial medical evidence that the petitioner's original work-related condition (lumbar strain) had resolved," here, the carrier did not meet its "burden of establishing that [the claimant's] work-related disability has ceased." *Hiscoe*, 147 N.H. at 230. The carrier's only argument before the CAB was that the claimant's work-related injury has ceased. Because the carrier did not argue in the alternative that the claimant had an earning capacity, it did not introduce any evidence to meet this burden.

The carrier's fallback position, however, is that the CAB erred in finding the claimant's symptoms are a result of the work-related injury. The carrier argues that the medical evidence, such as development of left-leg radiculopathy when the claimant initially complained of right-sided pain, shows that the claimant's symptoms are based upon a pre-existing condition and not the work-related injury. The carrier argues that the CAB erred in relying upon Dr. Glassman's 2006 assessment instead of his current assessment, and in relying upon Dr. Sanchez's testimony because he incorrectly diagnosed the claimant with a cumulative injury. The carrier

maintains that the CAB decision was contrary to the weight of the evidence regarding the claimant's condition, and is therefore unjust and unreasonable. We disagree.

As set forth above, we will affirm the CAB's decision unless the carrier can demonstrate, by a clear preponderance of the evidence, that it is unjust or unreasonable. *Appeal of Fay*, 150 N.H. 321, 324 (2003). Moreover, in reviewing the CAB's findings, "our task is not to determine whether we would have found differently than did the board, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." *Appeal of Sutton*, 141 N.H. 348, 350 (1996) (quotation omitted). "The board's findings of fact will not be disturbed if they are supported by competent evidence in the record, upon which the board's decision reasonably could have been made." *Appeal of Anheuser-Busch Co.*, 156 N.H. 677, 679 (2008) (quotation omitted). "When faced with conflicting expert testimony, . . . factfinders are free to disregard or accept, in whole or in part, that testimony." *Sutton*, 141 N.H. at 351 (quotation omitted).

██ We first address whether the medical evidence supports a finding that the claimant's injury is work-related. The CAB relied upon Dr. Sanchez's testimony to support a finding that at least part of the claimant's symptoms are work-related. Dr. Sanchez is the claimant's current treating physician and meets with him regularly. "Treating physicians are especially important in a workers' compensation case: because a claimant's treating physicians have great familiarity with his condition, their reports must be accorded substantial weight." *Appeal of Morin*, 140 N.H. 515, 519 (1995) (quotation and brackets omitted). Dr. Sanchez testified that because of the November injury, the claimant suffers pain that is very difficult to control. He testified that it is not unusual for low back pain to develop into radiculopathy. He also testified that, as a result of the pain, the claimant's work capacity is limited. The CAB further relied upon the permanency ratings of Drs. Glassman and Tilton to support its decision. Thus, there is sufficient evidence in the record to support the CAB's decision that at least some of the claimant's symptoms are from the work-related injury.

Second, we address the CAB's decision to consider Dr. Glassman's 2006 assessment instead of his current evaluation. Dr. Glassman examined the claimant twice. Initially, he evaluated the claimant's impairment rating as five percent. One year later, Dr. Glassman found that the claimant's symptoms were a result of pre-existing injury, and that the lumbar strain work-related injury had resolved.

The CAB found Dr. Glassman's most recent assessment to be "incongruous." The CAB based this decision upon Dr. Glassman's assessment, one

year earlier, that the claimant had a five percent impairment rating. The CAB also considered its own finding in the prior decision that the claimant had suffered a permanent disability, as well as Dr. Tilton's thirteen percent impairment assessment. Thus, the CAB's decision not to consider Dr. Glassman's 2007 assessment is "supported by competent evidence in the record." *Sutton*, 141 N.H. at 350.

Third, we address the carrier's argument that the CAB should not have considered Dr. Sanchez's evaluation because Dr. Sanchez described the claimant's injury as cumulative. On March 5, 2007, the claimant submitted a questionnaire to Dr. Sanchez. Dr. Sanchez completed the questionnaire, including answering in the affirmative that the claimant's condition is "a cumulative trauma-type injury." At the CAB hearing, Dr. Sanchez clarified his response.

Dr. Sanchez testified that the claimant has two long-standing conditions — degenerative disc disease and spondylolisthesis. He testified that although the claimant's pre-existing condition is cumulative, he did not suffer a cumulative injury on November 7, 2003. Dr. Sanchez explained that the claimant's pre-existing degenerative condition involves an instability and the November incident aggravated the condition, tearing the ligaments resulting in chronic inflammation. Dr. Sanchez further clarified that with the incident, the claimant suffered a decompensation of adjusting mechanisms in his back, increased thickness of his joints and his bones started to grow.

Moreover, the claimant testified consistently with Dr. Sanchez's explanation that he did not suffer a cumulative injury in November 2003. The claimant testified that he experienced a prior work-related injury in 1998. The claimant, however, further testified that after receiving treatment for three weeks, he could return to work without issue. The claimant did not experience any back pain or require medication prior to the November 7, 2003 injury.

After a careful review of the record, we find that the CAB did not err in considering the evidence it did in finding a causal relationship between the November injury and the claimant's current symptoms. We cannot conclude that the carrier demonstrated, by a clear preponderance of the evidence, that the CAB's decision was unjust or unreasonable.

Finally, we address the carrier's argument that the CAB erred in finding that some work-related injury existed without providing specific findings as to which symptoms are from the work-related injury. RSA 281-A:43, I(b) provides: "The board shall make its decision or order setting forth its findings of fact and rulings of law within 30 days of the hearing." RSA

281-A:43, I(b) (Supp. 2008). The carrier does not cite a statutory provision that requires the CAB to make specific findings as to which symptoms are from the work-related injury.

■ The carrier's argument before the CAB was that the claimant's work-related injury had ceased. The CAB disagreed, issuing an order stating that it relied upon the assessments of permanent disability and Dr. Sanchez's testimony in finding that the claimant's work-related injury had not ceased. The CAB further granted certain requested rulings of law as well as the following findings of fact: (1) on November 7, 2003, the claimant suffered a low back injury after slipping on a piece of plastic; (2) prior to that date, the claimant had not received any treatment for low back pain other than the 1998 muscular strain; (3) the claimant has a pre-existing degenerative disc disease that was asymptomatic; (4) the claimant was assessed a thirteen percent whole person impairment rating based upon radiculopathy with motor and sensory involvement, spondylolisthesis, spinal stenosis and bilateral neuroforaminal narrowing; and (5) the claimant sustained a permanent injury to his lumbar spine and left lower extremity based upon the November injury. In light of these findings, the CAB's decision not to specify which symptoms were from the work-related injury was not unjust or unreasonable.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.