NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____


Compensation Appeals Board
No. 2016-0038


APPEAL OF JASON MALO
(New Hampshire Compensation Appeals Board)

Argued:  January 17, 2017
Opinion Issued:  February 17, 2017


Normandin, Cheney & O'Neil, PLLC, of Laconia (James F. Lafrance on the brief and orally), for the petitioner.


Trombley & Kfoury, PA, of Manchester (Paul R. Kfoury, Jr. on the brief and orally), for the respondents.


DALIANIS, C.J.  The petitioner, Jason Malo (the claimant), appeals a decision of the New Hampshire Compensation Appeals Board (CAB) reducing the rate at which his indemnity benefits are paid from the temporary total disability rate to the diminished earning capacity rate.  See RSA 281-A:28 (2010), :48 (Supp. 2016); see also N.H. Admin. Rules, Lab 510.03.  On appeal, he argues that the CAB erred by:  (1) finding that his physical condition had improved since he sustained the original, compensable, work-related injury; (2) determining that the change in his physical condition affected his earning capacity; and (3) failing to make specific findings of fact and rulings of law sufficient to allow meaningful appellate review.  We affirm.

The relevant facts follow.  The claimant is approximately 43 years old.  He completed the 11th grade and has a high school equivalency diploma.  He has worked as a mechanic for most of his working life.  He was a marine mechanic for approximately 20 years before becoming employed full-time by respondent MB Tractor & Equipment (the employer), in July 2011, to do heavy equipment repair.  On February 18, 2014, the claimant sustained a work-related, compensable injury.  On that day, he injured his back while working on an excavator using a large wrench and a blow torch.  He continued working that day and for the rest of the week, left work for treatment in early March, and, subsequently, was released to work with modifications.  The claimant left work again in late April 2014 because of pain.  Thereafter, he began receiving indemnity benefits from respondent Acadia Insurance Company (the carrier) at the temporary total disability rate.

The claimant's injury was diagnosed as a lumbar strain with "left sided radiculitis."  An April 2014 MRI showed that he had a "prominent left posterolateral/foraminal disc protrusion" at the L3-L4 intervertebral disc space, causing "likely mass effect upon the left L4 nerve root," "disc desiccation . . . consistent with some degenerative disease" at L4-L5, and a "small porta hepatis protrusion with associated annular tear," also at L4-L5.  A second MRI in May 2015 showed that the claimant has "a small to moderate sized posterolateral left-sided disc herniation" at L3-L4 and "a degenerating mildly bulging disc annulus with a superimposed relatively small posterolateral right-sided disc herniation" at L4-L5.

From April 2014 to September 2015, the claimant saw several providers and received epidural steroid injections, "lumbar medial branch blocks," physical therapy, group therapy, acupuncture, and opiate narcotics, all to no avail.

Three doctors have evaluated him for surgery and have opined that surgery is not indicated.  The last such evaluation was conducted by Anthony Salerni, M.D. in June 2015.  Based upon the May 2015 MRI, Salerni observed that the claimant did not have any "severe nerve compression, so [a] simple discectomy would not help him."  Salerni noted that the claimant has continued "to have refractory low back pain," which Salerni attributed to the claimant's original work injury.  The claimant's only surgical option, Salerni noted, was "fusion"; however, because the claimant is taking "high dose narcotics" and is "deconditioned," Salerni did not consider him a candidate for surgery at that time.

The claimant underwent two independent medical examinations (IMEs) by David B. Lewis, D.O.  See RSA 281-A:38 (Supp. 2016).  The first IME was in November 2014; the second IME was in June 2015.  In the first IME, Lewis diagnosed the claimant with "[l]umbosacral, facet, sacroiliac, piriformis strain" and assessed his pain complaints as "subjective."  Lewis observed that the

2

claimant has a "heightened pain response" and that he exhibited "Waddell signs." The respondents define "Waddell signs" as "[a]ny group of clinical tests occasionally used to identify patients whose back pain is not organic, i.e. more likely to be of psychological origin." Lewis further observed that his physical examination of the claimant did "not show any sort of neurological deficit" and that "the findings on the MRI are mostly mild." Lewis opined that the claimant "is so focused on his pain that he is not allowing himself to improve his stability," which makes "the situation worse." Following the first IME, Lewis determined that the claimant could work "full time, lifting . . . 15-20# occasionally."

In the second IME, Lewis noted that the "Waddell signs" were "worsening." He opined that the claimant's current treatment, which is "essentially medications including . . . an escalating dose of narcotics without true improvement," is not working and that the narcotics should be discontinued. Lewis observed that the claimant was exhibiting "greater pain behaviors without evidence [of] true neurological deficits." Lewis found the claimant to be at maximum medical improvement, capable of full-time light duty work, "lifting in the 15-20# range occasionally."

Other clinicians who have examined the claimant have concurred with some of Lewis's findings and observations. For instance, Peter J. Dirksmeier, M.D., who evaluated the claimant for surgery in July 2014, observed that the claimant's "Waddell's test was positive," that the "[s]traight leg raise [did] not elicit pain when [the claimant was] distracted," and that "[o]verreaction to stimulus [was] present." Dirksmeier made identical observations when he evaluated the claimant for surgery again in August 2015.

Similarly, the claimant's treating physician, Nathan Jorgensen, M.D., opined in December 2014 that "a majority of [the claimant's] problem[s] [are] [his] psychologic[al] unwillingness to work through the pain and to get beyond the pain itself." Jorgensen noted that the "significant psychological overl[a]y" to the claimant's physical condition "seems to be inhibiting his recovery." In January 2015, Jorgensen observed that although the claimant's back pain "truly seems to be disabling him completely," the MRI, taken in April 2014, "is not particularly concordant with the amount of pain that he has." Jorgensen stated that there "has been discussion by other practitioners that [the claimant] has extremely poor coping skills and that may explain his inability to work with his pain." Jorgensen opined that the claimant is unable "to psychologically deal with the back pain" and that he has "pain magnification."

The respondents initiated workers' compensation proceedings in April 2015, requesting a hearing "on the issue of the claimant's ongoing eligibility for weekly indemnity benefits," based, in part, upon the work release provided by Lewis in November 2014. A department of labor hearing officer held a hearing on the respondents' request in June 2015. In July, the hearing officer ruled in

3

favor of the respondents. The hearing officer explained that the respondents sought either to terminate the claimant's weekly indemnity benefits, or to reduce the rate at which his benefits are paid from the temporary total disability rate to the diminished earning capacity rate. The hearing officer stated that "[i]n a request to reduce or terminate workers' compensation indemnity benefits, the carrier [or employer] bears the burden of proof to demonstrate that such a reduction or termination is warranted by a change in condition." See RSA 281-A:48, I. The hearing officer impliedly found a change in the claimant's physical condition based, in part, upon the work release provided by Lewis in November 2014.

Having found a change in condition, the hearing officer then determined that "[b]ased on the claimant's testimony, educational background, work history, and the work release provided by Dr. Lewis, and the lack of evidence of work opportunity," the claimant was still entitled to compensation, but only at the diminished earning capacity rate. See N.H. Admin. Rules, Lab 510.03 (defining the diminished earning capacity rate of benefits for a "partially disabled person" that applies "in the absence of work opportunity and on the basis of medical and other evidence"). As a result of the hearing officer's decision, the claimant's benefits were reduced from the temporary total disability rate to the diminished earning capacity rate.

The claimant appealed the hearing officer's decision to the CAB, which conducted a de novo hearing in November 2015 at which the claimant was the sole witness. Based upon its review of the claimant's testimony and the submitted medical records, the CAB found that "the claimant has a work release and is not totally disabled." The CAB observed that the claimant "is not a surgical candidate" and that "there are no anatomic issues that have been found during objective testing." The CAB stated that "[t]he claim that [the claimant] is totally disabled is completely based on [his] subjective feelings and are [sic] not upheld by any objective findings." The CAB determined that the claimant "continues to be eligible for the Diminished Earning Capacity rate of compensation."

The claimant moved for rehearing, asserting that the CAB's decision failed to identify any change in his physical condition or his economic condition sufficient to justify paying him benefits at the diminished earning capacity rate, instead of at the temporary total disability rate. The claimant also challenged the CAB's finding that he is no longer totally disabled, observing that "[e]vidence of a work release or work capacity does not establish that [he] is no longer classified as totally disabled." The claimant also argued that the CAB's findings were insufficient as a matter of law because they were conclusory. The CAB denied the claimant's motion, and this appeal followed.

Our standard of review is established by statute:

> [T]he burden of proof shall be upon the party seeking to set aside any order or decision of the [CAB] to show that the same is clearly unreasonable or unlawful, and all findings of the [CAB] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

RSA 541:13 (2007); see RSA 281-A:43, I(c) (2010) ("Any party in interest aggrieved by any order or decision of the [CAB] may appeal to the supreme court pursuant to RSA 541."). "Thus, we review the factual findings of the CAB deferentially," and "its statutory interpretation de novo." Appeal of Phillips, 165 N.H. 226, 230 (2013).

The parties agree that this case is governed by RSA 281-A:48, which provides, in pertinent part:

> I. Any party at interest . . . may petition the commissioner to review . . . an award of compensation . . . upon the ground of a change in conditions, mistake as to the nature or extent of the injury or disability, fraud, undue influence, or coercion.
>
> . . . .
>
> III. If a petitioner files for reducing or for ending compensation, the petitioner shall submit along with the petition medical evidence that the injured employee is physically able to perform his or her regular work or is able to engage in gainful employment.

RSA 281-A:48, I, III. The parties also agree that the respondents' theory in this case is that there was a "change in conditions."

"The initial test for determining whether a claimant is entitled to compensation is whether the worker is now able to earn, in suitable work under normal employment conditions, as much as he or she earned at the time of injury." Appeal of Carnahan, 160 N.H. 73, 79 (2010) (quotation omitted). To terminate a claimant's benefits based upon a change of conditions related to his or her ability to perform work, the carrier or employer must demonstrate that the claimant's physical condition has improved such that he or she is "now able to earn, in suitable work under normal employment conditions, as much as he or she earned at the time of injury." Id. (quotation omitted); see Appeal of Hiscoe, 147 N.H. 223, 231 (2001) (distinguishing between what must

5

be proved to terminate benefits because the claimant is able to return to work and what must be proved to terminate benefits because the claimant's disability is no longer causally related to her workplace injury). In other words, to terminate a claimant's benefits based upon his or her ability to perform work, a carrier or employer must show that the claimant has regained his or her previous "earning capacity."

"Earning capacity" refers to a claimant's ability to compete in the labor market. Appeal of Woodmansee, 150 N.H. 63, 68 (2003). It is "an objective measure of a worker's ability to earn wages." Id. (quotation omitted). Determining a claimant's earning capacity requires considering "the worker's overall value in the marketplace, taking into account such variables as his age, education and job training." Id. (quotation, brackets, and ellipsis omitted).

However, on appeal, the respondents explain that they no longer seek to terminate the claimant's compensation, but rather seek to reduce the rate at which his benefits are paid. To reduce a claimant's compensation, the carrier or employer need not show that the claimant is "now able to earn, in suitable work under normal employment conditions, as much as he or she earned at the time of injury." Appeal of Carnahan, 160 N.H. at 80 (quotation omitted).

The claimant first argues that the CAB erred when it found that his physical condition has improved. He contends that "the evidence from his treating physicians was that his condition had become worse." "In reviewing the CAB's findings, our task is not to determine whether we would have found differently than did the CAB, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." Appeal of Phillips, 165 N.H. at 235 (quotation and brackets omitted). "The CAB's findings of fact will not be disturbed if they are supported by competent evidence in the record, upon which the CAB's decision reasonably could have been made." Id. (quotation and brackets omitted).

Here, the IMEs conducted by Lewis, together with (1) the opinion of Dirksmeier that the claimant was positive for Waddell signs and could do the straight leg raise when distracted, (2) the December 2014 opinion of Jorgensen that the claimant had significant psychological overlay, and (3) Jorgensen's January 2015 examination of the claimant after which he concluded that the MRI was not concordant with the amount of pain that the claimant experiences, support the CAB's finding that the claimant's physical condition has improved. Thus, because the CAB's finding that the claimant's physical condition has improved is supported by competent evidence in the record, we uphold it. See id.

Alternatively, the claimant asserts that, "[a]side from his age, education and entire work history as a mechanic, the only evidence in the record pertaining to [his] ability to compete in the labor market was his testimony that

he had not looked for other work because he wanted to return to his job with MB Tractor [& Equipment]." In this way, the claimant implies that evidence of his work capacity, age, education, and "entire work history" is insufficient to establish that he has a diminished earning capacity.

To the contrary, we have held that evidence of a claimant's work capacity, age, education, and job training is relevant to determine whether he has regained his prior earning capacity. See Appeal of Carnahan, 160 N.H. at 80; see also Appeal of Woodmansee, 150 N.H. at 68. We have also held that a carrier or employer "generally does not need to rely upon expert testimony" to establish a claimant's earning capacity, although such testimony is required "when, due to a claimant's job skills and education, the determination as to whether he . . . can compete in the open labor market is beyond the ken of the CAB." Appeal of CNA Ins. Co., 148 N.H. 317, 324 (2002).

The claimant has not argued, and we cannot conclude as a matter of law, that, because of his job skills and education, the determination of whether he is able to compete in the open labor market is beyond the ken of the CAB. See id. Thus, the CAB was entitled to rely upon its own judgment to determine whether the claimant now has a diminished earning capacity, given the evidence of his work capacity, age, education, and job training. Moreover, we hold that such evidence was sufficient to support the CAB's finding that the claimant has a diminished earning capacity.

Finally, the claimant argues that the CAB's decision is flawed as a matter of law because it contains insufficient findings of fact and rulings of law to permit meaningful judicial review. See Appeal of Kehoe, 139 N.H. 24, 27 (1994). RSA 541-A:35 (2007) requires an agency decision to "include findings of fact and conclusions of law, separately stated." In this case, although the CAB's decision is not a paragon of clarity, we conclude that it sets forth specific findings of fact and rulings of law sufficient to permit appellate review.

The claimant faults the CAB for failing to make a finding of a change in conditions and because it "made no analysis or findings with respect to [his] earning capacity." Although the CAB did not use the phrase "change in conditions," it found that the claimant was no longer "totally disabled." This finding is akin to a finding that the claimant's physical condition has improved. Similarly, the CAB's findings that the claimant "has a work release" and that he "continues to be eligible for the Diminished Earning Capacity rate of compensation" are equivalent to a finding that the claimant has a diminished earning capacity. Cf. Appeal of Carnahan, 160 N.H. at 80-81 (determining that CAB's findings that the claimant no longer had his prior earning capacity and that he was capable of gainful employment were tantamount to a finding that the claimant had a diminished earning capacity).

The claimant also faults the CAB because it "failed to explain how it may have adopted the opinion of Dr. Lewis over all the other medical providers, nor [sic] how it may have resolved the conflicting claims with respect to Dr. Jorgensen" and because it "did not say or intimate that [the claimant] was not credible or that it disbelieved his testimony." However, such findings are not necessary to permit meaningful judicial review.

Affirmed.

HICKS, CONBOY, and LYNN, JJ., concurred.