# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0622, <u>Appeal of JoAnn Hoff</u>, the court on February 24, 2021, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The claimant, JoAnn Hoff, appeals an order of the Compensation Appeals Board (CAB) reducing her temporary disability compensation benefits to a fixed rate. She primarily argues that the CAB erred by concluding that a change in conditions occurred justifying the reduction in benefits. <u>See</u> RSA 281-A:48 (Supp. 2020). We affirm.

The following facts were found by the CAB or are supported by the record. On October 23, 2017, the claimant was injured while working as a licensed practical nurse for Valley Regional Hospital, Inc., the employer. She thereafter reported experiencing lower back pain and numbness in her legs. An MRI revealed a lumbar disc protrusion. The claimant began receiving temporary disability benefits in November 2017. <u>See</u> RSA 281-A:28 (2010). On December 14, 2017, Dr. Pikus performed surgery on the claimant to address her leg symptoms. During follow-up appointments in early 2018, Dr. Pikus consistently noted that the claimant's leg symptoms had resolved, but her back pain persisted. At a physical therapy appointment in May 2018 the claimant stated: "I think I could go back to work and do desk work."

In June 2018, the claimant returned to Dr. Pikus, reporting that her leg symptoms had returned. He ordered another MRI, which showed no significant negative changes compared with the previous one. Although the claimant continued to report back pain, Dr. Pikus noted that the cause of her pain was uncertain. Accordingly, he referred her to Dr. Mason for a physiatric evaluation and assistance with returning to work.

The claimant also underwent an independent medical evaluation in June 2018, at the request of the respondent, the employer's workers' compensation insurance carrier. <u>See</u> RSA 281-A:38 (Supp. 2020). Dr. Rudolf, who performed the IME, reviewed the claimant's medical records relating to her injury, interviewed the claimant, and performed a physical examination. He noted that the claimant reported ongoing back pain and numbness in her left foot and leg. He also observed that she experienced back discomfort when standing for short periods of time and walking for a distance longer than thirty feet, and that she could not lift more than seven to ten pounds or easily climb or

descend stairs. The IME report notes the claimant's statements that she could sit for extended periods of time if she adjusted positions and that she sat comfortably during the interview portion of the IME without displaying any "obvious pain behavior." Based upon his evaluation, Dr. Rudolf concluded that the claimant had "a work capability doing a sit down occupation," primarily desk work, and that she should "avoid long periods of standing or walking, no lifting or carrying greater than [ten] pounds."

As a result of the IME, on July 11, 2018, the employer offered the claimant a temporary, full-time position, as a patient access representative, which would involve completing "a variety of secretarial tasks." See RSA 281-A:23-b (2010). A workers' compensation task analysis, which was completed by the employer to evaluate the physical requirements of the temporary position, described the position as requiring occasional — between 1% and 33% of the time — standing and walking, and continuous — between 67% and 100% of the time — sitting, reaching, and fine motor skills. The claimant testified at a subsequent Department of Labor (DOL) hearing that she neither returned to work after receiving the offer, nor communicated with her employer about the offer.

On August 8, Dr. Mason saw the claimant and opined that she could not return to full duty work or her "regular job" as a licensed practical nurse. At the DOL hearing, the claimant testified that she did not inform Dr. Mason of the temporary position that she had been offered.

In September 2018, the respondent sent Drs. Pikus and Mason letters with the employer's temporary job offer and workers' compensation task analysis attached, requesting their opinion regarding whether the claimant was capable of performing the job. Dr. Pikus opined that she could perform the job, with a "sit/stand modification." Dr. Mason opined that the claimant was capable of performing the job, and noted: "please allow occasional break to stand/stretch/reposition."

In October 2018, the claimant sought and obtained appointments to be seen separately by both Drs. Pikus and Mason, complaining of back pain. On December 9, 2018, the claimant completed a functional capacity evaluation (FCE) to determine her work ability. The report found that the claimant could not maintain static standing without the support of one hand for more than one minute, could maintain static standing with upper extremity support for eight minutes, could tolerate dynamic standing for twenty-five consecutive minutes, and was able to walk 400 feet with the assistance of a cane. The FCE also found that she could sit for over an hour at once, and for twenty-minute intervals thereafter. Based upon the claimant's performance, the FCE report concluded that she could not "return to office type nursing like she was doing prior to [the] injury." The report further concluded that the claimant "can tolerate full[-]time employment at a sedentary physical demand level," with

"dynamic standing limited to [twenty-five] minutes at most occasionally in the course of a work day" and walking "limited to 400[] [feet] at most at a time."

The respondent requested a DOL hearing to review the claimant's benefits eligibility. See RSA 281-A:48. On January 31, 2019, a DOL hearing officer held a hearing and thereafter concluded that the claimant was capable of full-time sedentary work and, thus, that a change in conditions occurred justifying a reduction in benefits. See id. The hearing officer reduced the claimant's benefits to a fixed partial rate. Following the DOL hearing, on February 20, 2019, Dr. Mason saw the claimant and determined that she could not return to work, but "was made aware of [the] FCE," and, in the record for that visit, wrote: "Please refer to this detailed assessment [regarding] work abilities."

The claimant appealed the DOL hearing officer's decision to the CAB, which conducted a de novo hearing. The CAB concluded that the claimant had work capacity based upon the FCE, IME, Dr. Pikus's approval of the job offer, and Dr. Mason's deferral to the FCE regarding work capacity. The CAB therefore granted the respondent's request to reduce the claimant's compensation to a fixed rate. The claimant filed a motion for reconsideration and rehearing, in which she argued, in part, that any job offer she received from the employer was not approved by her treating physicians, as required by the relevant regulation. See N.H. Admin. R., Lab 504.04(g). The CAB denied her motion, and this appeal followed.

We will not set aside or vacate the CAB's decision except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that the decision is unjust or unreasonable. Appeal of CNA Ins. Cos., 143 N.H. 270, 272 (1998); see RSA 541:13 (2007). Our review of the CAB's factual findings is deferential. Appeal of Hartford Ins. Co., 162 N.H. 91, 93 (2011); see RSA 541:13 ("[A]ll findings of the [CAB] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable.").

The claimant argues that the CAB erred by concluding that a change in conditions occurred under RSA 281-A:48, justifying a reduction in benefits. We disagree.

"The two-step analysis for reducing or terminating a claimant's benefits is: (1) whether the claimant has experienced a change in conditions; and, if so, (2) whether that change affected [her] earning capacity." Appeal of Carnahan, 160 N.H. 73, 79 (2010) (quotations and emphasis omitted). Pursuant to RSA 281-A:48, I, the respondent was entitled to petition to review the claimant's award of benefits "upon the ground of a change in conditions." When petitioning to reduce the claimant's benefits, the respondent was required to "submit along with the petition medical evidence that the injured employee is physically able to perform his or her regular work or is able to engage in gainful

3

employment." RSA 281-A:48, III. The medical evidence demonstrates that the claimant was physically unable to return to her regular work as a licensed practical nurse. Accordingly, to reduce her benefits, the respondent was required to submit medical evidence demonstrating that the claimant could engage in gainful employment. See id.

Gainful employment is defined as "employment which reasonably conforms with the employee's age, education, training, temperament and mental and physical capacity to adapt to other forms of labor than that to which the employee was accustomed." RSA 281-A:2, X-a (2010). An employee's ability to engage in gainful employment is a change in conditions justifying a reduction in benefits. Carnahan, 160 N.H. at 79.

"We have treated 'gainful employment' as 'work capacity,' or the claimant's ability to 'perform some kind of work.'" Id. at 80. "'Gainful employment' does not require a finding that the claimant is able to earn as much as he or she earned at the time of injury . . . ." Id. Thus, a finding of work capacity in this case is sufficient to support the CAB's decision to reduce the claimant's benefits. See id.

Medical evidence in the record reflects a consensus among the physicians who examined her that the claimant was capable of performing sedentary work, and thus that she had work capacity. In particular, the IME concluded that the claimant could perform sedentary work without standing or walking for long periods of time and with limits on the weight she could lift. The FCE similarly concluded that the claimant could tolerate full-time sedentary employment, with similar restrictions on the amount she could lift and a recommendation that she not stand for extended periods of time. Furthermore, the record shows that the claimant is sixty-four years old, is a licensed practical nurse, and has work experience as a patient access representative and nurse. We therefore conclude that the record demonstrates that the claimant had the ability to perform some kind of work — a sedentary occupation which required minimal standing, walking, and lifting — and supports the CAB's determination that she was able to engage in gainful employment. See RSA 281-A:48, III; see also RSA 281-A:2, X-a; Carnahan, 160 N.H. at 79-80.

According to the claimant, however, her condition worsened after the IME and Dr. Mason kept her out of work following the DOL hearing, demonstrating that she did not have work capacity. We find this argument unavailing because, prior to the DOL hearing, the claimant did not make Dr. Mason aware of her temporary, sedentary job offer and, after the hearing, Dr. Mason referred to the FCE for the claimant's work capacity, which stated that she could perform sedentary work. The claimant also argues that the FCE suggests that she does not have sedentary work capacity; this argument is

4

contradicted by the FCE's conclusion that the claimant "can tolerate full[-]time employment at a sedentary physical demand level."

The claimant also argues that the CAB erred by concluding that she has earning capacity. Earning capacity refers to a claimant's ability to compete in the labor market. Appeal of Malo, 169 N.H. 661, 667 (2017). In this context, earning capacity "is an objective measure of a worker's ability to earn wages," and requires "considering the worker's overall value in the marketplace, taking into account such variables as [her] age, education and job training." Id. (quotations omitted). Based upon the claimant's age, professional accreditation, and work experience, which we described above, we conclude that the record supports the CAB's conclusion that the claimant has earning capacity. See id. at 668-69.

The claimant further argues that the CAB erred by relying on the temporary job offer to adjust her benefits rate. We disagree. The claimant asserts that the job offer failed to comply with Rule 504.04(g), which requires that, when offering temporary alternative work, the employer "offer a position as approved by the treating physician" and the employee "demonstrate a reasonable effort to comply." N.H. Admin. R., Lab 504.04(g). Here, one of the claimant's treating physicians, Dr. Mason, approved the temporary job offer. Dr. Mason noted her approval of the offer and wrote "please allow occasional break to stand/stretch/reposition," which is not a remarkable suggestion for an individual performing a desk job. The approval of the job offer by one of her treating physicians satisfies the regulation. See id. Furthermore, the record does not suggest that the claimant "demonstrate[d] a reasonable effort to comply" with the offered position by, for example, communicating to the employer Dr. Mason's suggestion and asking if the employer could accommodate it, despite testimony from the employer at the DOL hearing representing that it could accommodate the suggestion. Id. Instead, the claimant did not return to work following the offer.

The claimant also argues that the CAB erred by determining that she was "not particularly credible." We note that "the weighing of the testimony and the assessment of its credibility are solely within the province of the [CAB]." Appeal of N.H. Dep't of Health and Human Servs., 145 N.H. 211, 215 (2000) (quotation and brackets omitted). Evidence, namely Facebook posts suggesting that the claimant may have been involved in a home baking business, support the CAB's credibility determination. See Carnahan, 160 N.H. at 77 ("Our task is not to determine whether we would have found differently than did the CAB, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." (quotation and brackets omitted)). Furthermore, the claimant fails to articulate how the result would have changed had the CAB credited her testimony. The claimant asserts that "her testimony . . . reflects what the FCE

reports," and the FCE reports that the claimant had the ability to perform sedentary work.

Accordingly, we conclude that the CAB did not err by concluding that a change in conditions occurred justifying the reduction in benefits.

<u>Affirmed</u>.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**