# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2021-0204, <u>Appeal of James Lowry</u>, the court on April 11, 2022, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The petitioner, James Lowry (claimant), appeals a decision of the New Hampshire Compensation Appeals Board (CAB) reducing his indemnity benefits from the temporary total disability rate to the diminished earning capacity rate. <u>See</u> RSA 281-A:28 (2010), :48 (Supp. 2021); <u>see</u> <u>also</u> <u>N.H. Admin. Rules</u>, Lab 510.03. On appeal, he argues that the evidence failed to prove that he has an earning capacity. We affirm.

We will not disturb the CAB's decision absent an error of law, unless we find it to be unjust or unreasonable. <u>Appeal of LeBorgne</u>, 173 N.H. 488, 493 (2020); <u>see</u> RSA 541:13 (2021). All findings of the CAB upon questions of fact properly before it are deemed <u>prima</u> <u>facie</u> lawful and reasonable. RSA 541:13. We will uphold the CAB's factual findings if they are supported by competent evidence in the record. <u>Appeal of Dean Foods</u>, 158 N.H. 467, 474 (2009). As the appealing party, the claimant has the burden of demonstrating that the CAB's decision was erroneous. <u>Appeal of LeBorgne</u>, 173 N.H. at 493.

The claimant is a 37-year-old high school graduate who worked in landscaping for 12 to 15 years. On February 16, 2018, he sustained a work-related, compensable injury to his lower back. He has not returned to work since his injury. From February 17, 2018 to September 24, 2020, he received indemnity benefits at the temporary total disability rate.

In 2018, the employer's workers' compensation insurance carrier sought to terminate or reduce the claimant's indemnity benefits from the temporary total disability rate to the diminished earning capacity rate based upon a June 29, 2018 independent medical examination (IME) by Victor Gennaro, D.O., who opined that the claimant could perform sedentary work. The carrier submitted a January 14, 2019 labor market survey from Laurie Martin, a certified vocational rehabilitation counselor, identifying sedentary and light duty jobs that the claimant could perform. By decision dated July 12, 2019, the CAB denied the carrier's request.

In 2020, the carrier again sought to terminate or reduce the claimant's benefits to the diminished earning capacity rate, based upon a July 2, 2020 IME by Kenneth Polivy, M.D., who opined that the claimant could perform light duty work. At the carrier's request, Martin prepared an "Updated Labor Market

Survey Report" dated September 2, 2020 identifying eleven jobs that were within the claimant's physical capacity and within 50 miles of his residence. According to Martin, "light duty" work requires greater work capacity than sedentary work. A Department of Labor hearing examiner reduced the claimant's benefits to the diminished earning capacity rate. On de novo appeal, the CAB found Gennaro's 2019 opinion more persuasive than Polivy's 2020 opinion or the opinions of the claimant's attending providers and concluded that the claimant is capable of sedentary work.

The CAB stated that Martin's 2020 report included four sedentary jobs, adding that, regardless of the contents of the report, it could rely upon Gennaro's full-time, sedentary work release, and the claimant's "earning history, education, interpersonal communication skills, and acknowledged ability to learn to use a computer" to find that he has an earning capacity. The CAB concluded that the claimant has an earning capacity to do sedentary work. On appeal, the claimant does not dispute that he has a sedentary duty work capacity. Rather he argues that the evidence did not establish that he has an earning capacity.

"Work capacity and earning capacity measure different things." Appeal of Woodmansee, 150 N.H. 63, 67 (2003). "Work capacity refers to whether the claimant may now be able to perform some kind of work . . . while earning capacity refers to the claimant's ability to compete in the open labor market." Id. at 67-68. The claimant first argues that the CAB erred in describing four of the eleven jobs listed in Martin's 2020 report as sedentary when, he asserts, they were light duty jobs. Assuming, without deciding, that the CAB misunderstood the light duty requirements of the four jobs, we disagree with the claimant's assertion that the availability of these four jobs "formed the basis for [its] conclusion, as lay people, that there were sedentary jobs available." In its order, the CAB correctly noted that, pursuant to our decision in Appeal of Malo, it "need not rely on information provided" in a labor market survey to conclude that the claimant has an earning capacity.

In Appeal of Malo, we held that "the CAB was entitled to rely upon its own judgment to determine whether the claimant now has a diminished earning capacity, given the evidence of his work capacity, age, education, and job training." Appeal of Malo, 169 N.H. 661, 669 (2017). In this case, the CAB noted that the claimant "participated in the approximately two-hour hearing from his home via computer," that he "communicated effectively in response to questions from the participating attorneys," and that he "testified that he is able to type and is functional with Microsoft Word software." "Relying on Dr. Gennaro's full time, sedentary work release, the [CAB] concluded that entry level, sedentary jobs exist in the open labor market that would be suitable for a person with the claimant's earning history, education, interpersonal communication skills, and acknowledged ability to learn to use a computer."

2

We disagree with the claimant's assertion that, because Martin did not meet with him to assess his interpersonal communication skills or his ability to learn computer skills, the evidence was insufficient to support the CAB's decision. Although we recognized in Malo that there may be cases in which, "due to a claimant's job skills and education, the determination as to whether he can compete in the open labor market is beyond the ken of the CAB," 169 N.H. at 668 (quotation and ellipsis omitted), this is not such a case, and we reject the claimant's arguments to the contrary. As in Malo, the CAB was entitled to rely upon its own judgment to determine whether the claimant has a diminished earning capacity, based upon his work capacity, age, education, and employment experience. See id. at 669.

The claimant also argues that it was error for the CAB to conclude that he has an earning capacity when, he asserts, Martin's report proved that there were no sedentary jobs available. The record does not support the claimant's argument. Martin testified at the CAB hearing that, in preparing her 2020 report, she focused on light duty jobs because the most recent IME concluded that the claimant was capable of light duty work. In her previous report, Martin focused on sedentary jobs because, at that time, the most recent IME found that the claimant was capable of sedentary work. Martin testified that the claimant "could still perform those [sedentary] jobs." Under these circumstances, Martin's 2020 report cannot reasonably be construed as proof that no sedentary jobs were available. We conclude that there is sufficient evidence in the record to support the CAB's conclusion that the claimant has an earning capacity. See id.

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

3